IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Andrew R. Perrong
1657 The Fairway #131
Jenkintown, PA 19046

       Plaintiff

vs.

Bally's Corporation
100 Westminster St.
Providence, RI 02903

       Defendant

Case No. _____

JURY TRIAL DEMANDED

## COMPLAINT

### Preliminary Statement

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff Andrew R. Perrong ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

3. The Plaintiff never consented to receive the message, which was placed to him for telemarketing purposes.

1

## Parties

4. Plaintiff Andrew R. Perrong is a Pennsylvania resident, and a resident of the Eastern District of Pennsylvania.

5. Defendant Bally's Corporation is a Delaware corporation headquartered in this District. Its headquarters and primary place of business is 100 Westminster St. Providence, RI 02903. Among other gambling properties, Bally's Corporation operates Bally's Atlantic City Hotel & Casino in Atlantic City, NJ.

6. Upon information and belief, the Defendant orchestrates its advertising, marketing, and telemarketing operations from this District, as it did for the message the Plaintiff received.

## Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the text message sent to the Plaintiff was sent from or orchestrated in this District.

## The Telephone Consumer Protection Act

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits all Automated Calls To Protected Numbers

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

11. Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services, like Mr. Perrong's VoIP service, for which the called party is charged, thus shifting the cost of automated or prerecorded telephone calls onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live calls, and such calls can be costly and inconvenient.

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch

systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or *any* service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. 20-5317 (E.D. Pa. July 15, 2021).

The Growing Problem of Automated Telemarketing

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*, FCC, (July 22, 2016, 10:30 AM), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls [https://archive.is/w2afC] (statement of FCC chairman).

16. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

17. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Fed. Trade Comm'n, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc [https://archive.is/oPZSW].

18. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018),

https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html [https://archive.is/mS9Fb]; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018, 10:30 PM), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203 [https://archive.is/V2UYp].

19. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. *U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index*, YouMail (Aug. 6, 2019, 9:00 AM), https://www.prnewswire.com/news-releases/us-endures-4-7-billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html [https://archive.is/pnU5s].

20. According to online robocall tracking service "YouMail," 5.6 billion robocalls were placed in October 2019 at a rate of approximately 180.6 million per day. *Robocall Index*, YouMail, https://robocallindex.com/ [https://archive.is/fwZD8]. In 2019, YouMail's robocall totals exceeded 58.5 billion. *Historical Robocalls By Time*, YouMail, https://robocallindex.com/history/time [https://archive.is/XWefY].

21. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. *Consumer Complaint Data Center*, FCC, www.fcc.gov/consumer-help-center-data [https://archive.is/wip/ojuBF].

The National Do Not Call Registry

22. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.

*See* 47 C.F.R. § 64.1200(c)(2).

23. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

24. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**Factual Allegations**

25. Defendant is in the business of operating, *inter alia*, the Bally's Atlantic City Hotel & Casino in Atlantic City, NJ (the "casino").

26. Defendant relies on telemarketing to solicit potential customers for its casino and associated events held at the casino.

27. Defendant is not registered as a telemarketer with the Attorney General of Pennsylvania.

28. One of the strategies used by the Defendant involves the use of automated text messages. Defendant sends out these message blasts *en masse* to telephone numbers throughout the area, hoping they reach someone interested in attending an event or gambling at the casino.

29. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

30. Plaintiff has the private telephone number of (215) 338-XXXX (the "number").

31. The Plaintiff is charged for each call and text message placed to the (215) 338-XXXX number.

32. The number is not associated with any business.

33. The Plaintiff registered the number on both the Federal and Pennsylvania State Do-Not-Call registries, was on such registries for more than thirty-one days prior to the message, and never removed the number from these registries.

34. The number is used for Mr. Perrong's personal residential use.

35. Text messages are treated as "calls" under the TCPA.

36. On November 19, 2021, Defendant sent a prerecorded, preprogrammed text message to the (215) 338-XXXX number from the caller ID (347) 556-8193. The message used a prerecorded voice and was also sent using an Automatic Telephone Dialing System ("ATDS").

37. The message sent to the Plaintiff was in Chinese and stated the following:

"你好。 大西洋城百利賭場將於 11 月 24 日星期三晚上 1 點舉辦 Mimi Choo 演唱會。 請聯繫Bally 亞洲部門工作人員或回覆這短信預訂演出門票。 此外，我們在 11/26 星期五和 11/27 星期六從 下午五點到 晚上10 點舉行30 萬美元的 1 周年抽獎活動！獲勝者將每 30 分鐘抽取一次，就有機會贏得免費老虎機賭碼。 謝謝！"

38. As the Plaintiff does not speak Chinese, the Plaintiff used Google Translate to translate the message. The Google Translate translation is:

"Hi. The Baileys Casino in Atlantic City will host a Mimi Choo concert on Wednesday, November 24th at 1pm. Please contact Bally's Asian staff or reply to this text message to book show tickets. In addition, we will hold a $300,000 1st Anniversary Lucky Draw on Friday 11/26 and Saturday 11/27 from 5pm to 10pm! The winner will draw every 30 minutes and have a chance to win free slot machine betting codes. Thanks!"

39. The message also transmitted the below photograph of a flyer for the event, which prominently features the Bally's logo:

7



40.     As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021). Although the Plaintiff is ignorant of the exact system used to send the message to the Plaintiff, the system is an ATDS because it has the capacity to store numbers both randomly and sequentially.

8

41. The indicia of the message indicates that the Defendant used an ATDS because it would be illogical to store numbers or produce numbers in an *en masse*, unpersonalized calling campaign other than randomly or sequentially, such as by a human dialing the number manually. The calling campaign was unpersonalized and untargeted because it was sent to a group of persons *en masse* in Chinese, despite the fact that the Plaintiff does not speak Chinese. The nature of the calling campaign supports the inference that the Defendant used an ATDS, such as one which "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a preproduced list." *Id.* at 1171 n.7.

42. The Plaintiff requested, in writing, that Defendant place him on its Do-Not-Call list and provide him a copy of its Do-Not-Call policy, on December 7, 2021. Plaintiff received no response as of the date of filing this complaint, despite having forwarded the correspondences to multiple points of contact in Bally's Corporation, including Customer Service, executive management, legal department, and privacy department.

43. Because Plaintiff asked to be placed on Defendant's Do-Not-Call list and was not, it is evident that Defendant does not maintain such a list. Likewise, based on this fact and the fact that it did not produce one when requested, it is clear that Defendant does not have any Do-Not-Call policies or procedures in place. Based on the nature of its illegal activities, Defendant's noncompliance with the law in this regard is unsurprising.

44. The Plaintiff is ignorant of the exact process by which the system(s) used by the Defendant operate other than drawing the reasonable inferences and making the allegations that it uses prerecorded voices to transmit messages and that it stores or produces telephone numbers randomly or sequentially based on the facts ascertainable from the message he received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of

an ATDS is more relevant to a summary judgment motion than at the pleading stage. *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

45. The Plaintiff never provided his consent or requested the message.

46. The Plaintiff was charged $0.02 for the message.

47. The message demonstrates that it was sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it pitched Defendant's casino, including slot machine betting and a concert. The message therefore qualified as telemarketing. *See* 47 C.F.R. § 64.1200(f)(12).

48. Upon information and belief, Defendant pays unknown third parties to perform messaging for them. These Defendants were involved in some fashion in placing the illegal message the Plaintiff received. However, without the benefit of discovery, the specific details and exact technical role they played in the message the Plaintiff received remains a mystery.

49. Indeed, an FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network, LLC Declaratory Ruling Petition*, 28 FCC Rcd. 6574, 6592–93 (2013).

50. Plaintiff was harmed by the message. The Plaintiff was charged for the message. It wasted network resources, bandwidth, power, and storage space. Moreover, the message injured Plaintiff because it was frustrating, obnoxious, annoying, was a nuisance and disturbed the solitude of Plaintiff.

## Legal Claims

### Count One:
### Violation of the TCPA's Prohibition Against Calling Numbers for Which the Called Party is Charged with an Artificial or Prerecorded Voice

51. By sending a message to the Plaintiff using both a ATDS and/or artificial or prerecorded voice, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

52. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute at least one violation of the TCPA, 47 U.S.C. § 227(b), by sending messages, except for emergency purposes, to the telephone line of Plaintiff using an ATDS or using artificial or prerecorded voices to a number for which the called party is charged for the message.

53. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on its behalf's violations of the TCPA, 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $500 in damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

54. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on its behalf from violating these provisions in 47 U.S.C. § 227(b) in the future.

55. The Defendant's violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

## Count Two:
## Violation of the Pennsylvania Telemarketer Registration Act
### 73 Pa. Cons. Stat. § 2241

56. By sending at least one telemarketing message to the Plaintiff without registering as telemarketers under Pennsylvania law, Defendant violated 73 Pa. Cons. Stat. § 2243.

57. This constitutes a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 73 Pa. Cons. Stat. § 2246(a).

58. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute a violation of the Pennsylvania Telemarketer Registration Act (PTRA), 73 Pa. Cons. Stat. § 2241, including by sending a message to Plaintiff's number, on the Pennsylvania Do-Not-Call registry, without registration.

59. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on its behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff is entitled to an award of $300 in damages for each and every message sent to his telephone number in violation of the statute, pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201. *See* 73 Pa. Cons. Stat. § 2246(a).

60. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on its behalf from violating the PTRA in the future.

## Count Three:
## Violation of the TCPA's Implementing Regulations
## Codified at 47 C.F.R. § 64.1200

61. By placing at least one telemarketing message to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on its Do-Not-Call list, Defendant violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

62. This amounts to three violations since Defendant committed three violations per message. The first violation is sending a message to a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2). The second violation is by sending a message to Plaintiff without having a Do-Not-Call policy in place. 47 C.F.R. § 64.1200(d)(1). The third violation is by sending a message to Plaintiff without maintaining the Plaintiff on its internal Do-Not-Call list. 47 C.F.R. § 64.1200(d)(6).

63. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute at least three violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to maintain Mr. Perrong's number on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

64. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on its behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every message and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

65. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on its behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls or sending messages in violation of any of the TCPA's implementing regulations in the future.

66. The Defendant's violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

**Relief Sought**

WHEREFORE, Plaintiff requests the following relief:

a. Injunctive relief prohibiting Defendant from calling telephone numbers or sending messages using an ATDS, making calls or sending messages using an artificial or prerecorded voice, and/or in violation of the PTRA, and/or in violation of the TCPA's implementing regulations.

b. Because of Defendant's violations of the TCPA's restrictions in 47 U.S.C. § 227(b), Plaintiff Perrong seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

c. Because of Defendant's violations of the PTRA, Plaintiff Perrong seeks for himself $300 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201-9.2(a).

d. Because of Defendant's violations of the TCPA's implementing regulations, Plaintiff Perrong seeks for himself $500 in damages for each violation or—where

such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(5).

      e.    Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: **December 28, 2021**

*[signature]*

Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com
